COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Alston and Senior Judge Coleman

SCOTTY DAMERON, SR.

v.      Record No. 3084-08-2

ALBEMARLE COUNTY DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 2, 2009

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Michael J. Hallahan, II, on brief), for appellant.

(Larry W. Davis; Jennifer C. Lyttle; Kelly A. Hobbs, Guardian *ad
litem* for the minor child; Albemarle County Attorney's Office;
Dygert Wright Hobbs Heilberg, PLC, on brief), for appellee.

Scotty Dameron, Sr., appeals the trial court's approval of the permanency planning order for

his child, changing the goal to adoption, and terminating his parental rights to his child pursuant to

Code § 16.1-283(C)(2). Dameron argues it was not in his child's best interests to change the goal to

adoption because the Albemarle County Department of Social Services (DSS) failed to consider

him as a placement option, failed to provide him with services necessary to form a bond with his

child, and failed to offer him any services. Upon reviewing the record and briefs of the parties, we

conclude this appeal is without merit. Accordingly, we summarily affirm the decision of the trial

court.[1] See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "Our decision to affirm the termination order necessarily subsumes [the circuit court's order approving adoption as the goal in the foster care plan] aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265 n.3, 616 S.E.2d 765, 769 n.3 (2005).

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Code § 16.1-283(C)(2) requires clear and convincing evidence that termination is in the best interests of the child and that

> the parent . . . without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The child was born on February 15, 2006 while Dameron was incarcerated. On February 13, 2007, Stephanie Dumont, the child's mother, signed an entrustment agreement with DSS because she was scheduled to be incarcerated and no relative could care for the child.[2] The initial

---

[2] DSS explored the option of placing the child with Dameron's mother, but she was also scheduled to be incarcerated.

plan was to return the child to Dumont after her release from incarceration. Dumont was released in November 2007, but she was slow to find a suitable home and job. However, after finding both, DSS placed the child with Dumont for a trial home visit in July 2008. Approximately two weeks later, Dumont returned the child to the foster care family because "she couldn't handle it anymore." Dumont subsequently agreed to the termination of her parental rights to the child.

While in DSS custody, the child had no contact with Dameron because the child's guardian *ad litem* recommended against taking the child to the prison to visit Dameron. DSS sent letters to Dameron informing him of the proceedings involving Dumont and gave him updates on the child. Dameron sent cards and letters to the child, and he agreed with the initial goal of returning the child to Dumont. However, after DSS indicated it intended to change the goal to adoption, Dameron informed DSS that he objected and he wanted custody after his release from prison in August 2010. DSS did not offer any services to Dameron.

Following Dumont's return of the child to DSS, the juvenile and domestic relations district court (JDR court) held a permanency planning hearing. Neither Dameron nor other relatives could provide a permanent home for the child. Moreover, since February 2007, aside from the two weeks with Dumont in July 2008, the child has been with the same foster family, is thriving, and has bonded with the family. The JDR court terminated Dameron's rights to the child and changed the goal to adoption. Dameron appealed to the trial court. That court ruled likewise.

While Dameron's incarceration, standing alone, is not sufficient to support the trial court's termination of his parental rights, "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). By the same token, Code § 16.1-283(C)(2) contains no excuse for a parent's failure to remedy the conditions leading

to foster care because he has been incarcerated for over twelve months subsequent to the child's placement in foster care.

Prior to February 2007, when DSS took custody of the child, Dumont brought the child to the prison to visit Dameron during the child's first year of life, but Dameron has never held or touched the child and has only communicated with the child through a prison window. Dameron testified that when DSS indicated its intention to change the goal to adoption in July 2008, no one contacted him for names of possible relative placement. Dameron testified the child could live with his grandmother. She, however, was eighty-five years old, used a walker, and was cared for by two non-relatives. Dameron testified that since 1997 he has been in and out of prison and has spent only three years of his adult life unincarcerated. The child will be four and a half years old when Dameron is scheduled to be released from prison.

Dameron argues the trial court erred in terminating his residual parental rights because DSS failed to provide him with any services. Whether services must be offered to an incarcerated parent was addressed by this Court in Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 590 S.E.2d 575 (2004). There, we stated

> we find no merit in [the father's] contention . . . that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer such services. . . . [A]s long as he was incarcerated, the Department would have no avenue available to offer [the father] services aimed at assisting him in regaining custody of the child.

Id. at 163-64, 590 S.E.2d at 583.

Although Dameron sent the child letters and cards, he has never had a parental relationship or parental bond with the child. It is in a child's best interests to have consistency, stability, and security and no evidence was offered if or when Dameron can so provide for his child. Dameron contends since he will be released from prison in approximately eighteen months, his parental rights

should not be terminated.  However, Dameron's "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" <u>Linkous v. Kingery</u>, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting <u>Frye v. Spotte</u>, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).  There is no evidence that Dameron will ever be able to care for his child.  Furthermore, the one paternal relative Dameron suggested as a custodian is eighty-five years old, uses a walker, and requires assistance from non-relatives.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  <u>Kaywood v. Halifax County Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based upon the foregoing, the evidence was sufficient to support the trial court's termination of Dameron's parental rights and its decision to change the goal in the permanent foster care service plan to adoption.  Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>